## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01088-WYD-MEH

KENNETH J. COOL, P.C., a Colorado Corporation, and
KENNETH J. COOL,

      Plaintiffs,

v.

BERKELEY LAW & TECHNOLOGY GROUP, LLP, f/k/a BERKELEY LAW &
TECHNOLOGY GROUP, LLC, an Oregon limited liability partnership,

      Defendant.

---

## DEFENDANT'S SPECIAL APPEARANCE, MOTION TO DISMISS AND MOTION TO QUASH SERVICE OF PROCESS UNDER FED. R. CIV. P. 12(B)(2) & (5), OR, IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404(a)

---

      Defendant Berkeley Law & Technology Group, LLP ("BLTG"), by its attorneys, hereby makes this special appearance in order to move the Court to quash service of process and dismiss the Complaint based on the Court's lack of personal jurisdiction over BLTG, or alternatively to transfer this case to the District of Oregon. As grounds therefor, BLTG states:

### <u>INTRODUCTION</u>

      BLTG is an intellectual property law firm based in Beaverton, Oregon, which contracts with patent attorneys to provide legal services to its clients. BLTG entered into such an agreement with plaintiff Kenneth Cool ("Cool"); under the terms of the agreement, Cool was allowed to work remotely from any location, and was required to make himself available at certain times in Oregon. Cool chose to do his work for BLTG from Colorado for his own benefit: none of BLTG's clients, nor any of the matters it handles, is located in Colorado. Based on this unilateral decision, Plaintiffs now seek to hale BLTG into court in Colorado, in complete

57391-0002/LEGAL13233539.2

disregard of BLTG's due process rights and reasonable expectations. The Court should not countenance this effort, and should dismiss the case. In addition, Plaintiffs have not properly served BLTG, and service of process should be quashed. Finally, and in the alternative, the Court should transfer this case to the District of Oregon, where a related action is pending.

## BACKGROUND

BLTG is an Oregon limited liability partnership engaged in an intellectual property law practice based out of its Beaverton, Oregon office. (Skaist Decl., attached hereto as Exhibit 1 ("Ex. 1"), ¶ 2.) BLTG and its attorneys represent clients primarily before the U.S. Patent and Trademark Office ("USPTO"). (*Id.*) Because of the distinctive nature of its practice, BLTG has a unique staffing arrangement with some of its attorneys. BLTG both hires employee attorneys, who work out of its Beaverton office, and enters into independent contractor agreements with attorneys ("contract attorneys"), who may choose to be located anywhere, and who, as described below, are able to work remotely by accessing BLTG's computer network in Oregon. (Ex. 1, ¶ 3.)

In approximately January 2006, plaintiff Kenneth Cool ("Cool") called Howard Skaist ("Skaist"), then BLTG's managing attorney, at BLTG's offices in Oregon. (Ex. 1, ¶ 4.) BLTG did not solicit the call; rather, Cool called Skaist because they were acquainted from when they both worked for Intel (for which Skaist worked in Oregon). (*Id.*) As a result of the conversation, BLTG and Cool entered into an oral agreement that Cool would provide legal services for BLTG as a contract attorney. The parties later formalized this agreement with successive written contracts (a true and correct copy of the most recent is attached hereto as Exhibit 2.) Both contracts were signed by Skaist for BLTG in Oregon. (*Id.*) Consistent with the oral agreement, Section 3.1 of the contract provided:

> Contractor will render intellectual property legal services on behalf of the Firm to Firm Clients. In carrying out the services to be performed under this contract, Contractor shall work directly with Firm Management, other independent contractors of the Firm, and firm employees and any other party designated by the Firm and shall fulfill any related duties requested by the Firm. <u>Contractor is not</u>

<u>required to perform these duties at any specific time or place</u>, but shall meet various deadlines and milestones that may be established by the Firm, Firm clients, or applicable court and/or administrative agencies . . . In addition, to facilitate coordination with the Firm and Firm clients, Contractor agrees to, as requested by the Firm from time-to-time, meet with firm personnel and/or other independent contractors of the Firm at the Firm's offices and/or meeting locations in close proximity to such offices during regular business hours.  Contractor, however <u>is free to choose when he/she works in the Firm's offices, if at all,</u> subject to work deadlines and the schedules of those he/she is working with.

(Ex. 2, § 3.1) (emphasis added).

Unlike some of BLTG's other contract attorneys, Cool elected not to work at BLTG's offices, and chose rather to base his work in Colorado.  Cool's decision benefited BLTG in no way: his projects with BLTG dealt exclusively with federal (and not Colorado) law, and BLTG does not appear before Colorado courts or represent Colorado clients. (Ex. 1, ¶ 5.)  Cool is not even a member of the Colorado bar, and nearly all of the clients he served were located on the West Coast.  (*Id.*)  If anything, Cool's decision disadvantaged BLTG (resulting once or twice in discussions about his moving to Oregon), and was made for his convenience and benefit only.

Even though Cool performed work in Colorado, because of BLTG's computer network, BLTG was not required to direct any activities toward Colorado.  For instance, all of BLTG's files and documents are maintained in Oregon, and copies of all of these files and documents are stored electronically on BLTG's server (located in Oregon).  (Ex. 1, ¶ 6.)  Therefore, to obtain the documents he needed to do his work, Cool would himself connect with and access the Oregon server.  BLTG generally did not need to and did not send documents to Cool in hardcopy (such as by mail, UPS, or facsimile) because he would simply access them through the server. Similarly, Cool was provided an email account with a web-based email service provided by third-party contractor, BcentralHost, a company owned by Microsoft and located in Redmond, Washington.  (*Id.*)  The server for the email service was geographically located outside of Colorado.  (*Id.*)  Thus, when BLTG (or anyone else, for that matter) directed an email to Cool, the email would not be transmitted to Colorado, but to the email server located outside of

Colorado.  To view his emails, Cool (in Colorado or wherever he happened to be at the time) would access that server, and retrieve the transmissions to his location.  A dominant portion of the communications between Cool and BLTG's attorneys and staff occurred via email.  (*Id.*)

BLTG maintains office space at its office in Oregon for its contract attorneys, including Cool, which he was entitled to use at any time, and which he did use when he was in Oregon. The contract required Cool to come to Oregon at specific times, including for quarterly firm meetings and for certain meetings with clients.  (Ex. 1, ¶ 8.)  Clients and third parties could contact Cool through the Oregon office:  BLTG's website and Cool's business cards and email signatures listed his address as that of BLTG's Oregon office.[1]  (Ex. 1, ¶ 9.)  Cool's legal support and malpractice insurance were provided by BLTG out of Oregon.  (Ex. 1, ¶ 10.)

Other than its contract with Cool (and one other contract attorney discussed below), BLTG has no contacts with Colorado.  BLTG does not specifically direct advertising to Colorado for contract attorneys, and although it has contracted with one other attorney who performed similar contract work in Colorado, that attorney was also not solicited by BLTG, but rather contacted BLTG himself and met with BLTG in Oregon.  (Ex. 1, ¶ 11.)  BLTG does not solicit clients in Colorado, and has never represented any clients located in Colorado.  (Ex. 1, ¶ 12.)  BLTG has never represented clients in litigation or other proceedings in Colorado.  (*Id.*) BLTG maintains no offices in Colorado, owns no property in Colorado, and contracts with no other individuals or entities located in Colorado.  (*Id.*)  It does not pay Colorado taxes, and has no registered agent in Colorado.  (*Id.*)

Cool terminated the contract in December 2006.  (Ex. 1, ¶ 14.)  Despite the lack of contact between BLTG and Colorado, Plaintiffs have now filed this suit in this Court, seeking sums allegedly owed under the parties' contract.  On April 23, 2007, a process server attempted

---

[1] Thus, for instance, all correspondence from the U.S. Patent and Trademark Office and from clients  ("USPTO") for matters Cool was handling was sent to BLTG's Oregon office (Ex. 1, ¶ 10.)

to serve the complaint and summons on BLTG.  He did so by handing a copy of the process to BLTG's receptionist, who is not authorized to accept service on behalf of BLTG.  (Ex. 1, ¶ 17.)

On May 14, 2007, BLTG filed a complaint against Cool in the United States District Court for the District of Oregon.  A true and correct copy of this complaint is attached hereto as Exhibit 4.  In its complaint, BLTG asserted claims for breach of contract, misappropriation of trade secrets, various business torts, and for declaratory judgment regarding its obligations vis-à-vis Cool under their agreement.

## ARGUMENT

### A.    Colorado Lacks Personal Jurisdiction over the Defendant

Under Fed. R. Civ. P. 12(b)(2), the Court should dismiss a complaint when the court lacks personal jurisdiction over the defendant.  The plaintiff bears the burden of demonstrating the existence of personal jurisdiction.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).[2]

To establish personal jurisdiction is appropriate under the Due Process Clause,[3] a plaintiff must first demonstrate the existence of "minimum contacts" between the defendant and the forum state.  *Id.* at 1090 (*quoting World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  The minimum contacts standard may be met in two ways.  First, a court may "assert specific jurisdiction over a nonresident defendant 'if the defendant has purposely directed his

---

[2] The plaintiff's burden of proof depends on whether the Court decides with or without holding an evidentiary hearing.  *OMI*, 149 F.3d at 1091.  Where the Court does not hold such a hearing, the plaintiff needs to make a "prima facie showing of personal jurisdiction."  *Id.*

[3] An additional prong of the personal jurisdiction analysis is whether the defendant is subject to the court's jurisdiction under the Colorado long-arm statute.  However, because Colorado courts have held that personal jurisdiction extends to the full extent of the Due Process Clause under Colo. Rev. Stat. § 13-1-124(1)(a) (the applicable statute covering the transaction of business within the state), the Court may collapse the analysis into a single inquiry:  "whether the exercise of personal jurisdiction over [the defendant] comports with due process."  *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000).

activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* at 1091 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "General jurisdiction," on the other hand, requires a more stringent showing of "continuous and systematic general business contacts" with the forum state. *Id.* (internal quotation omitted). Finally, if the requisite minimum contacts exist, then the court must consider whether "the exercise of personal jurisdiction over the defendant would comport with fair play and substantial justice;" i.e., that such assertion would be "reasonable" under the circumstances. *Id.* (*quoting Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987)). An interplay exists between the minimum contacts and reasonableness components of the personal jurisdiction inquiry such that "the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* at 1092 (*quoting Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

### 1.    BLTG Lacks Minimum Contacts with Colorado

Plaintiffs' complaint alleges no facts which would support general jurisdiction over BLTG, and it is indisputable no such facts exist. BLTG has no offices or continuing presence in Colorado; it does not have Colorado clients nor does it represent clients in Colorado proceedings; it pays no Colorado taxes; and it owns no property in Colorado. In general, it simply has no "general business contacts with the forum state" unrelated to this litigation. *See id.* at 1091. *See also Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996) (general jurisdiction factors include whether defendant (1) solicits business in the state; (2) sends agents into state on regular basis; (3) holds self out as doing business in the forum state; and (4) volume of business done in forum state); *Int'l Beauty Prod., LLC v. Beveridge*, 402 F. Supp. 2d 1261, 1272 (D. Colo. 2005) (noting high threshold necessary to establish general jurisdiction).

Plaintiffs likewise cannot demonstrate specific jurisdiction over BLTG, because BLTG has not purposely availed itself of the privilege of doing business in Colorado. *See OMI*, 149

F.3d at 1091.  In the specific jurisdiction context, the minimum contacts inquiry requires a showing of "purposeful availment;" i.e., that "the defendant purposefully directed its activities at residents of the forum;" and that "the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'"  *Id.* (*quoting Asahi*, 480 U.S. at 109) (emphasis in original).

Purposeful availment "requires actions by the Defendant which create a <u>substantial</u> connection with the forum state."  *Id.* at 1092 (*quoting Asahi*, 480 U.S. at 109) (emphasis added).  As noted above, such substantial connection must specifically result from the actions of the defendant.  *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1419 (10th Cir. 1988) (internal quotation omitted and emphasis added) ("[p]urposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff and generally requires <u>affirmative conduct</u> by the defendant which allows or promotes the transaction of business within the forum state"); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995) (internal quotation omitted) ("[u]nilateral activity of those claiming a relationship with a nonresident defendant is not sufficient and it is essential in each case that there be some act which the defendant purposely avails itself of the privilege of conducting activities within the forum State"); *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd*, 385 F.3d 1291, 1296 (10th Cir. 2004) ("[g]enerally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else").  This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' fortuitous,' or 'attenuated' contacts."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).  *See also Bell Heli. Textron*, 385 F.3d at 1296 (same).

It is well established that the existence of a contract between a resident plaintiff and a nonresident defendant does not by itself constitute the necessary minimum contacts to confer specific personal jurisdiction over the defendant.  *See Nat'l Bus. Brokers, Ltd v. Jim Williamson*

*Prod., Inc.*, 115 F. Supp. 2d 1250, 1254 (D. Colo. 2000) ("[t]he law is clear that a party does not submit itself to personal jurisdiction in a distant forum simply by entering into a contract with a party that resides in that forum," even if defendant enters the forum state to discuss some of the details of that contract). *See also SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202 (D. Colo. 2002) ("Colorado courts have previously refused personal jurisdiction over out-of-state defendants on the basis of insufficient minimum contacts where those defendants have entered into and allegedly breached a contract with a Colorado resident"); *New Frontier Media, Inc. v. Freeman*, 85 P.3d 611, 614 (Colo. Ct. App. 2003). Rather, the court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (*quoting Rudzewicz*, 471 U.S. at 479).

Here, these factors demonstrate that BLTG did not purposefully avail itself of the privilege of doing business in Colorado or conduct any activity creating a substantial connection with Colorado. Any contact with Colorado is a result of the random or fortuitous act that Cool chose to perform his work in Colorado for his (not BLTG's) benefit and purposes, and analyzing the relevant factors makes clear that the "focal point" of the parties' relationship was Oregon, not Colorado. *See Towne*, 46 F.3d at 1080.

First, any prior negotiations did not result from BLTG soliciting Cool's employment: rather, Cool reached out to BLTG in Oregon based upon his acquaintance with BLTG's managing partner, an acquaintance that arose from when they worked for a previous employer with offices in Oregon and elsewhere. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) (finding absence of personal jurisdiction when, inter alia, "[plaintiff] has not demonstrated that [defendant] solicited [plaintiff's] business").

Nor did the parties' relationship or contemplated future consequences depend upon any connection with the state of Colorado: indeed, "the fact that [Cool] happened to be a resident of

[Colorado] was of no consequence to [BLTG]." *See id. See also Beveridge*, 402 F. Supp. 2d at 1274 (Colorado employer failed to show that defendant—former employee who performed work in California—had purposefully availed himself of the privilege of acting in Colorado even though he accepted employment by a Colorado company and payment from a Colorado bank, communicated with supervisors located in Colorado, and issued checks from a Colorado bank account).  Indeed, Cool is not a member of the Colorado bar and he was not contracted with to provide service to any Colorado clients or on any Colorado matters, as there were none of either.

Similarly, the terms of the parties' agreement had no connection with Colorado—to the extent the agreement had any geographic nexus, it was with Oregon, as under its terms, Cool was required to make himself available in Oregon, and the contract centered on BLTG's Oregon based law practice.  The parties' actual course of dealing was likewise centered in Oregon: BLTG had office space available for Cool in Oregon, which he used when in Oregon; Cool traveled to Oregon for quarterly firm meetings and to meet with clients; and USPTO and client correspondence on BLTG matters was directed to him in Oregon, not Colorado.  While Cool made the decision not to work in Oregon but rather to base his work out of Colorado, this unilateral conduct on his part cannot form the basis for the exercise of jurisdiction over BLTG. *See Bell Helicopter*, 385 F.3d at 1296 ("specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else"); *Beveridge*, 402 F. Supp. 2d at 1274 (former employer's allegations, including that defendant accepted employment by a Colorado company, not sufficient to allege purposeful availment); *Whittaker v. Med. Mut. Of Ohio*, 96 F. Supp. 2d 1197, 1200-01 (D. Kan. 2000) (plaintiff's decision to seek treatment in forum state did not create personal jurisdiction when defendant insurance company sent payments to and communicated with her in forum state).

Likewise, in order to obtain the materials he needed to do his work, Cool accessed BLTG's server located in <u>Oregon</u>.  He could have done so from anywhere, and the fact that he

chose to do so from Colorado cannot support a finding of jurisdiction over BLTG. *See id.*[4]
Similarly, communications between BLTG and Plaintiff largely occurred, as a physical matter,
outside of Colorado. The majority of the communications occurred by email, and when BLTG
sent emails addressed to Cool, the emails would be transmitted to a server located <u>outside of
Colorado</u>. To read his emails, Cool would himself reach out of Colorado (or wherever he
happened to be at the time) to connect to and access the server—therefore, any emails BLTG
sent to Cool do not constitute a contact with Colorado. *See Towne*, 46 F.3d at 1075 ("[u]nilateral
activity of those claiming a relationship with a nonresident defendant is not sufficient"). And,
the parties' face-to-face meetings occurred in Oregon, not Colorado.[5]

      Plaintiffs may argue that the minimum contacts analysis is controlled in this case by
*Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004), wherein the court held that a
nonresident established minimum contacts by "voluntarily and knowingly entering into a
[contractual] relationship with a Colorado resident." However, in *Benton*, the plaintiff did not
unilaterally choose to act in Colorado. The *Benton* court also found "significant" the fact that the
Defendant "sent representatives to Colorado . . .in order to maintain and further [the] business
relationship," a factual circumstance not present here. *See id.*, at 1077. Finally, the *Benton* court
emphasized that it was a "very close case," and (as discussed below) in fact found the exercise of
personal jurisdiction unwarranted under the reasonableness prong. *Id.* at 1076. *See also Equifax
Serv., Inc. v. Hitzi*, 905 F.2d 1355, 1358 (10th Cir. 1990) (fact that California-based employee

---

    [4] Nor can the mere fact that payment may have been sent to Plaintiffs in Colorado create a
sufficient basis for personal jurisdiction. *See Trans-Continent Refrig. Co v. A Little Bit of Sweden, Inc.*,
658 P.2d 271, 272, 273 (Colo. Ct. App. 1982) (contract and "attendant activities," including mailing of
contract payments to Colorado, not sufficient to establish personal jurisdiction over nonresident).

    [5] On one occasion, Cool had a short meeting with Skaist in Colorado. Skaist was in Colorado for
one day for purposes unrelated to BLTG's contract with Cool, and met with Cool primarily for social
purposes. (Ex. 1, ¶ 13.) Regardless, this random meeting cannot itself create personal jurisdiction over
BLTG. *See Nat'l Bus. Brokers*, 115 F. Supp. 2d at 1254 (a party does not submit itself to personal
jurisdiction even if defendant enters the forum state to discuss some of the details of that contract).

chose to be employed by Kansas employer was not sufficient by itself to subject employee to personal jurisdiction by Kansas court).

In summary, the parties' contract does not provide sufficient minimum contacts to satisfy the requisite minimum contacts. An apposite opinion from this Court reinforces this contention: in *AST Sports Science, Inc. v. CLFL Dist. Ltd.*, No. 05-cv-01549-REB-CBS, 2006 WL 686483 (D. Colo. March 16, 2006) (attached hereto as Exhibit 5), a Colorado company asserted a breach of contract claim against foreign defendants, alleging that they had "ordered a sizeable amount of product from plaintiff on a regular, monthly basis from 1998 through 2005", and asserting claims (like here) of breach of contract, quantum meruit, and unjust enrichment based on nonpayment. Despite the length and regularity of the parties' relationship, the Court held that it lacked personal jurisdiction over the defendants, stating:

> The quantity and regularity of these sales is insufficient to demonstrate that defendants purposefully availed themselves of the privileges of transacting business in Colorado. It is the quality, rather than the quantity, of the contacts that controls the personal jurisdiction analysis. . . . To the extent these sales were "negotiated," they were carried out via email or facsimile between the parties, but those types of communications likewise are insufficient to confer jurisdiction over defendants. . . . Under the circumstances, it seems defendants contractual contacts with Colorado are based on the mere fortuity that plaintiff has its offices here. That fact alone does not give this court personal jurisdiction over these non-resident defendants.

*Id.* at *3 (emphasis added and internal citations omitted). The same is true here: BLTG's contractual contacts with Colorado result only from Cool's unilateral decision (made entirely for his own benefit) to perform work under their agreement in Colorado. Such cannot support the exercise of personal jurisdiction over BLTG, and this case should be dismissed.

## 2. Exercise of Personal Jurisdiction Over Defendant Would Not Be Reasonable

As demonstrated above, BLTG does not have minimum contacts with Colorado; however, even could Plaintiffs create a close case with regards to such contacts, it would be

manifestly unfair and unreasonable for the Court to exercise personal jurisdiction over BLTG. *See OMI Holdings,* 149 F.3d at 1092 ("the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction"). Factors relevant to this "reasonableness" analysis include "[a] the burden on defendant, [b] the forum state's interest in resolving the controversy, [c] the plaintiff's interest in attaining effective and convenient relief, [d] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [e] the shared interest of the several states in furthering fundamental social policies" *Benton,* 375 F.3d at 1078. The relevant factors here weigh in favor of dismissal.

First, the burden on BLTG is significant: it has no presence, offices or property in Colorado, is not licensed to and does not do business in Colorado, and has no ongoing connections with Colorado. *See id.* at 1079. The majority of relevant witnesses and evidence are located in Oregon: the only likely witness in Colorado is Cool. (*See* Ex. 1, ¶ 16.) Next, Colorado's interest in adjudicating the dispute, as well as the Court's and the parties' interests obtaining an efficient resolution, is impacted by the fact that this case should be decided under Oregon, not Colorado, law as Oregon has the most significant relationship with the dispute. *See Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997).[6] *See also Benton*, 375 F.3d at 1079-80 (need to apply foreign law counseled against exercise of personal jurisdiction by Colorado court). Similarly, because the parties' contract was centered in Oregon, Oregon's interest in resolving the controversy outweighs Colorado's interest in providing a forum for Plaintiffs. This is particularly so because Plaintiffs can obtain effective and convenient relief in Oregon. Indeed, Cool entered the contract with the understanding that he was required to be available in Oregon

---

[6] As discussed above, the focal point of the parties' contractual relationship was Oregon. The parties negotiated and entered into the contract at least partially in Oregon, its subject matter was to provide legal services for BLTG, an Oregon-based law practice, and, as discussed above, the only location that the contract required performance was in Oregon. *See id.* at 941 (listing factors).

at certain times, and therefore cannot not be heard to complain should the suit be heard in Oregon.  Finally, BLTG has filed suit against Cool in Oregon, and Plaintiffs may assert their claims in that litigation, avoiding the inefficiency and risk of inconsistent verdicts by hearing this matter in the State that has the most significant connection with the dispute.  Consequently, as the "reasonableness" factors weigh compellingly in BLTG's favor, the exercise of personal jurisdiction over it would offend traditional notions of fair play and substantial justice, and this case therefore should be dismissed.

**B.      Service of Process was Inadequate and Should be Quashed**

Additionally, this Court does not have jurisdiction over BLTG because Plaintiffs' service of process was inadequate under the Colorado Rules of Civil Procedure.  *See Usatorres v. Marina Mercante Nicaraguenses, S.A.,* 768 F.2d 1285, 1286 n. 1 (11th Cir. 1985) (federal court reviews the sufficiency of process after removal by looking to state law).  Under Colorado law, a court has jurisdiction over a defendant only if the defendant was properly served.  *United Bank of Boulder v. Buchanan*, 836 P.2d 473, 477 (Colo. Ct. App. 1992).  The rules for service of process must be complied with strictly.  *Bush v. Winker*, 892 P.2d 328, 332 (Colo. Ct. App. 1994) ("[t]he mandatory requirements for valid service of process are fundamental because of the due process requirements of notice").  "When a defendant files a motion to quash service of process, the plaintiffs have the burden of establishing all facts essential to jurisdiction."  *ReMine ex rel. Liley v. Dist. Court*, 709 P.2d 1379, 1382 (Colo. 1985).

Under Colorado Rule 4(e)(4), a partnership such as BLTG may be served by delivering a copy of process to the partnership's registered agent in Colorado or any other jurisdiction, its general partner, a "member" (if it has managing members), or the functional equivalent of a general partner or member.  Plaintiffs' return of service indicates that process was served on Kristi Schroeder, alleged to be BLTG's "Office Manager."  (Ex. 3.)  (Ms. Schroeder is actually the receptionist, not the Office Manager (Ex. 1, ¶ 18); however, neither title renders her an

appropriate person to serve.)  Ms. Schroeder is not a registered agent, general partner, or member (or functional equivalent) of BLTG, nor is she otherwise authorized to accept service of process on behalf of BLTG or any of its partners.  (*Id.*)[7]  Consequently, service must be quashed as inadequate under Colorado Rule 4.

**C.        Alternatively, this Case Should be Transferred to the District of Oregon**

Even if this Court can exercise personal jurisdiction over BLTG, the Court should transfer the case to the District of Oregon where it may be consolidated with BLTG's pending case against Cool.  28 U.S.C. § 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The movant bears the burden of demonstrating that transfer is appropriate.  *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  The determination is placed firmly within the discretion of the district court on an individualized, case-by-case consideration of convenience and fairness.  *See id.* at 1516.  Relevant factors include:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id*.

While a plaintiff's choice of forum is normally given deference, that is not the case where, as here, "Defendant had a right to remove this case to federal court and Plaintiff has no enforceable right to remand this case to state court."  *Rabbi Jacob Joseph Sch. v. Province of*

---

[7] Consequently, Plaintiffs' service was not proper under Fed. R. Civ. P. 4(h) either.

*Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004). In any case, Cool agreed that he will acquiesce to any venue preferences of BLTG, by waiving "any choice of venue in connection with legal proceedings for any claim arising under this agreement." (Ex. 2, § 18.). *See also REO Sales v. Prudential Ins. Co. of Am.,* 925 F. Supp. 1491, 1492 (D. Colo. 1996) (venue provision in contract alters presumption in favor of plaintiff's choice of forum under § 1404(a)).

The remaining factors weigh in favor of transfer. Importantly, "the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Id.* Indeed, avoiding the situation where two cases involving the same or similar issues "leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *See Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). Here, a parallel proceeding raising common issues of fact and law is pending in Oregon.

While this action was filed first (though not properly served), the parties' dispute is centered in Oregon, and Oregon is the most appropriate venue. As discussed above, the only likely witness from Colorado is Cool; most of the relevant witnesses are located in Oregon or elsewhere in the Pacific Northwest. (Ex. 1, ¶¶ 15-16.) All of BLTG's billing records and other relevant documents are in Oregon. Likewise, as demonstrated above, Oregon law will apply, and there is an obvious advantage in having an Oregon court determine questions of Oregon law. Finally, there are unique circumstances in that the temporary incapacity of one of this Court's seven non-Senior district judges has likely resulted in a heavier caseload per active judgeship. *See, e.g.*, Gen. Order 2007-01. Under these circumstances, it is clear that Oregon is the most convenient and most appropriate forum for the parties' dispute, and the Court should transfer this case to the District of Oregon for consolidation with BLTG's pending case there.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss this case for lack of personal jurisdiction, or alternatively transfer the case to the District of Oregon.

Dated this 31st day of May, 2007.

Respectfully submitted,

By: *s/ Romney Philpott*
      Romney Philpott
      Perkins Coie, LLP
      1899 Wynkoop Street, Suite 700
      Denver, CO 80202
      (303) 291-2300

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May, 2007, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

James D. Kilroy, Esq.
Snell & Wilmer, L.L.P.
1200 17th Street, Suite 1900
Denver, CO  80202
jkilroy@swlaw.com

By: *s/ Romney Philpott*
      Romney Philpott
      Perkins Coie, LLP
      1899 Wynkoop Street, Suite 700
      Denver, CO 80202
      (303) 291-2300

ATTORNEYS FOR DEFENDANT