# EXHIBIT 1

09901-0001/LEGAL11364364.1

Dockets.Justia.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.07-cv-01088-WYD-MEH

KENNETH J. COOL., P.C., a Colorado Corporation, and
KENNETH J. COOL,

    Plaintiffs,

v.

BERKELEY LAW & TECHNOLOGY GROUP, LLP, f/k/a BERKELEY LAW & TECHNOLOGY GROUP, LLC, an Oregon limited liability partnership,

    Defendant.

---

**DECLARATION OF HOWARD A. SKAIST IN SUPPORT OF MOTION TO DISMISS**

---

    My name is Howard A. Skaist. I am an individual over the age of eighteen (18) years. I make this Declaration in support of Berkeley Law & Technology Group, LLP's ("BLTG") Special Appearance, Motion to Dismiss and to Quash Service of Process under Fed. R. Civ. P. 12(b)(2) & (5), or in the Alternative, to Transfer under 28 U.S.C. § 1404(a) ("Motion"). Except as noted below, I have personal knowledge of the facts stated herein, and would be willing and able to testify thereto if and when called upon to do so.

    1.    I am the founder and principal counsel of BLTG, the defendant in the above-captioned action.

    2.    BLTG is an Oregon limited liability partnership engaged in an intellectual property law practice based out of its Beaverton, Oregon office. BLTG and its attorneys represent clients before the U.S. Patent and Trademark Office ("USPTO").

3. BLTG both hires employee attorneys, who work out of its Beaverton office, and enters into independent contractor agreements with attorneys ("contract attorneys"), who may choose to be located anywhere.

4. In approximately January 2006, plaintiff Kenneth Cool ("Cool") called me, then BLTG's managing attorney, at BLTG's offices in Oregon. BLTG did not solicit the call; rather, Cool called me because we were acquainted from when we both worked for Intel. I was employed by Intel as the Director of Patents in Oregon. As a result of the conversation, BLTG and Cool entered into an oral agreement that Cool would provide legal services for BLTG as a contract attorney. The parties later formalized this agreement with two successive written contracts. A true and correct copy of the most recent is attached to the Motion as Exhibit 2. I signed both contracts for BLTG for in Oregon.

5. Some of our contract attorneys choose to work in Oregon. However, Cool elected not to work at BLTG's offices, and instead, to base his work in Colorado. Cool's decision to work in Colorado benefited BLTG in no way. As noted elsewhere, BLTG represents no Colorado clients, does not appear in Colorado courts, and does not advise clients as to Colorado law. In fact, according to the Colorado Bar Association's website, Cool was not even and currently is not a member of the Colorado bar. Additionally, nearly all of the clients for whom he worked were located on the West Coast. Indeed, if anything, Cool's decision disadvantaged BLTG, because it is easier to be able to work face-to-face with someone than it is to work remotely with that person. Relying largely on email communications, whether between a contract attorney and legal support, or between the contract attorney and those overseeing the attorney's work, is more cumbersome and time consuming than face-to-face communications. This is especially so given the complex legal

issues and complex technologies that BLTG's attorneys regularly handle. As a result of these issues, one or two times we even discussed the possibility of Cool moving to Oregon. Regardless, Cool's decision to work out of Colorado was apparently made for his own convenience and benefit.

6. All of BLTG's files and documents are maintained in Oregon, and copies of all of these files and documents are stored electronically on BLTG's server (located in Oregon). Therefore, to obtain the documents he needed to do his work, Cool would himself connect with and access the Oregon server. BLTG generally did not need and did not send documents to Cool in hardcopy (such as by mail, UPS, or facsimile) because he would simply access them through the server.

7. Similarly, Cool was provided an email account with a web-based email service provided by third-party contractor, BcentralHost, a company owned by Microsoft and located in Redmond, Washington. BcentralHost does not exist anymore, but according to an employee at Concentric (which took over BcentralHost), BcentralHost's servers were in Fremont, California (and are now owned by Concentric). Thus, when BLTG (or anyone else, for that matter) directed an email to Cool, the email would not be transmitted to Colorado, but to an email server located in Fremont. Therefore, to view his emails, Cool (in Colorado or wherever he happened to be at the time) would access that server, and retrieve the transmissions to his current location. The dominant portion of the communications between Cool and BLTG's attorneys and staff occurred via email.

8. BLTG in the past and currently maintains office space at its office in Oregon for its contract attorneys, which previously included Cool. As a contractor of the firm, Cool was entitled to use this space at any time, and which he did use when he was visiting Oregon. Under the terms

3

of the contract, Cool was also required to come to Oregon at specific times, including for quarterly firm meetings and for certain meetings with clients, which he did.

9.   BLTG's website, as well as Cool's business cards and email signatures, listed his address as that of BLTG's Oregon office.  Thus, for instance, all correspondence from the USPTO and from clients for matters Cool was handling was sent to Cool at BLTG's Oregon office.

10.  Additionally, all of Cool's legal support and malpractice insurance were provided by BLTG out of Oregon.

11.  Other than its contact with Cool (and one other contract attorney discussed below), BLTG has no contacts with Colorado.  BLTG does not specifically direct advertising to Colorado for contract attorneys.  BLTG has contracted with one other attorney, named Thomas Dougherty, who performed similar contract work in Colorado.  However, neither I nor anyone else at BLTG solicited the contract with Mr. Dougherty; rather, Mr. Dougherty came to Oregon and interviewed with me at BLTG's offices in Oregon.  I believe that Dougherty sought BLTG out based on information he had received from his own acquaintances, who were familiar with BLTG.  Indeed, Dougherty previously lived in Oregon and was and is a member of the Oregon bar.

12.  BLTG does not solicit clients in Colorado, and has never represented any clients located in Colorado.  BLTG has never represented clients in Colorado litigation or other proceedings in Colorado, nor has it advised clients as to Colorado law.  BLTG maintains no offices in Colorado, owns no property in Colorado, and contracts with no other individuals or entities located in Colorado.  BLTG does not pay Colorado taxes, and has no registered agent in Colorado.

4

13.     On one occasion, Cool and I met for a short time in Colorado. I was in Colorado for one day for purposes unrelated to BLTG's contract with Cool, and met with Cool primarily for social purposes.

14.     Cool terminated the contract in December 2006.

15.     Plaintiffs have asserted that BLTG owes them money under a contract between BLTG and Cool, and under theories of quantum meruit and unjust enrichment. However, Cool's compensation was conditioned on a variety of factors, including whether the time he billed on matters resulted in collectible billing to clients. (See Ex. 2, § 4.)

16.     All of our time and accounting records, client billing records, emails and copies of correspondence (including related to problems with clients arising from Cool's work), etc., are located in Oregon. Further, the following witnesses would have relevant information with regard to this action:

(a)     Myself, Beaverton, Oregon: I have personal knowledge of all aspects

(b)     Jen Street, Beaverton, Oregon: Ms. Street is part of BLTG's accounting staff and has personal knowledge of BLTG's accounting records relevant to Cool's work;

(c)     Shelley Hoffman, Beaverton, Oregon: Ms. Hoffman is part of BLTG's accounting staff and has personal knowledge of BLTG's accounting records relevant to Cool's work;

(d)     Ted Karr, Beaverton, Oregon: Mr. Karr is an attorney with our office who worked with Cool and the clients Cool supported and has personal knowledge of BLTG's relationship with Cool including instances where we were unable to bill based upon Cool's poor work product;

5

(e) Paul G. Nagy, Paul G. Nagy, P.C., Rancho Palos Verdes, California: Mr. Nagy is a partner with BLTG who worked with Cool and the clients Cool supported and has personal knowledge of BLTG's relationship with Cool including instances where BLTG was unable to bill clients based upon Cool's poor work product; and

(f) Ilka Dalton, Hillsboro, Oregon: Ms. Dalton was one of Cool's legal assistants and has personal knowledge of BLTG's relationship with Cool, and may have knowledge regarding instances where clients were dissatisfied with Cool's work.

17. According to the Plaintiff's return of service, a copy of which attached to the Motion as Exhibit 3, on April 23, 2007, a process server provided a copy of the process to Kristi Schroeder. Ms. Schroeder is actually BLTG's receptionist, not its Office Manager, as alleged in the return of service. Regardless, Ms. Schroeder is not a registered agent, general partner, or member (or functional equivalent) of BLTG, nor is she otherwise authorized to accept service of process on behalf of BLTG or any of its partners.

18. A true and correct copy of the complaint BLTG filed against Cool in the U.S. District Court for the District of Oregon is attached to the Motion as Exhibit 4.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 31st day of May, 2007.

*s/ Howard Skaist*
Howard A. Skaist