# EXHIBIT 2

09901-0001/LEGAL11364364.1

Dockets.Justia.com

Attorney Independent Contractor Agreement

**Independent Contractor Agreement**

This Agreement is entered into as of the date fully executed (hereinafter, "Effective Date"), by and between Independent Contractor (hereinafter, "Contractor"), the individual named in Appendix A of this Agreement, and Berkeley Law & Technology Group, LLC (hereinafter, "the Firm" or "Firm"), with reference to the following facts:

**Recitals**

A. The firm of Berkeley Law & Technology Group, LLC is a limited liability company providing legal services of attorneys licensed to practice law in the States of Oregon and Washington and various other states, and before the US Patent and Trademark Office; and

B. The Firm desires to engage the services of Contractor in order to gain the Contractor's experience, skills, background, and knowledge, and Contractor desires to render such services on the terms and conditions hereinafter set forth.

In consideration of the agreements, covenants, and conditions herein contained, the Firm and Contractor hereby agree as follows:

**1. Term of Agreement**

Subject to the provisions and conditions of this Agreement, the term of this Agreement shall be from the Effective Date of this Agreement until the end of the calendar year of the Effective Date or until termination as set forth in Section 9 of this Agreement, if earlier than the end of the calendar year. Upon the end of a calendar year in which this Agreement is effective, the term of this Agreement automatically renews at the beginning of the next calendar year and continues until the end of such next calendar year unless terminated earlier as set forth in Section 9.

**2. Independent Contractor Status**

2.1 Contractor shall be an independent contractor and Contractor

acknowledges, and confirms to the Firm, his or her status as that of an independent contractor. Nothing herein shall be deemed or construed to create a joint venture, partnership, agency, employee/employer relationship or any other legal relationship other than that of independent contractor between Contractor and the firm for any purpose, including, but not limited to, taxes or employee benefits. Contractor understands and agrees that during the term of this Agreement, Contractor will be solely responsible for: (i) complying with all federal, state and local laws, ordinances, regulations and orders with respect to the performance of services under this Agreement, (ii) paying all filing fees and federal, state and local taxes (including income tax, self-employment tax, FICA, FUTA and other taxes applicable to his/her services to the Firm under this Agreement), (iii) paying all amounts required under local, state and federal workers' compensation acts, disability benefit acts, unemployment insurance acts and other employee benefits acts when due; and (iv) remaining in compliance with any and all licensing and registration requirements with any applicable regulatory body or government agency.

     2.2 Contractor understands and acknowledges that because Contractor is an independent contractor for all purposes and not an employee of the Firm, Contractor is not entitled to and will not be provided with any benefits now given by the Firm to, or hereafter declared for the benefit of, Firm employees, Partners, Shareholders, Members, Groups or Affiliates. Contractor shall have no claim against the Firm under this Agreement or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health and disability benefits, unemployment insurance benefits, or any other employee benefits of any kind.

     2.3 IN ADDITION, CONTRACTOR VOLUNTARILY WAIVES ANY INTEREST, CLAIM OR ENTITLEMENT TO, OR RIGHT TO PARTICIPATE IN, AND AFFIRMATIVELY ELECTS NOT TO ENROLL OR PARTICIPATE IN, ANY RETIRMENT, PENSION, 401(K), HEALTH CARE, OR OTHER BENEFIT PLAN MAINTAINED BY THE FIRM FOR ITS EMPLOYEES, PARTNERS, SHAREHOLDERS, MEMBERS, GROUPS OR AFFILIATES.

**3. Duties of Contractor**

     3.1 Contractor will render intellectual property legal services on behalf of the Firm to Firm clients. In carrying out the services to be performed under this contract, Contractor shall work directly with Firm Management, other independent contractors of the Firm and firm employees and any other party designated by the Firm and shall fulfill any related duties requested by the Firm. Contractor is not required to perform these duties at any specific time or place but shall meet various

deadlines and milestones that may be established by the Firm, Firm clients, or applicable court and/or administrative agencies, such as the United States Patent and Trademark Office. In addition, to facilitate coordination with the Firm and Firm clients, Contractor agrees to, as requested by the Firm from time-to-time, meet with firm personnel and/or other independent contractors of the Firm at the Firm's offices and/or meeting locations in close proximity to such offices during regular business hours. Contractor, however, is free to choose when he/she works in the Firm's offices, if at all, subject to work deadlines and the schedules of those he/she is working with.

   3.2 In all matters affecting the Firm's practice of law, Contractor shall maintain a standard of professional conduct that shall in all respects conform with the generally acceptable standards as may be required by the Firm, not violate the rules of any Bar under which Contractor is actively licensed, and abide by Firm policies.

   3.3 In connection with remaining in compliance with any and all licensing and registration requirements with applicable regulatory bodies or government agencies as mentioned above in section 2.1, Contractor shall be responsible for actions including, but not limited to, payment of all dues, completing any continuing education and maintaining associated records, and passing any examinations required for remaining in such compliance. Contractor shall obtain and pay for malpractice insurance approved by Firm Management to cover Contractor's errors and omissions in connection with providing legal services to Firm clients. Firm may provide such insurance to Contractor through its malpractice policy with reimbursement from Contractor (e.g., through set off from payment on invoices to Firm).

**4. Compensation**

   4.1 Subject to the terms and conditions of this Agreement, as full compensation for the services rendered pursuant to this Agreement, the Firm shall pay Contractor for services rendered by Contractor in connection with Firm client matters as specified in Appendix B of this Agreement, applied retroactively beginning with time billed from July 1, 2006 and going forward, less amounts that are not collectable or that become not collectable from Firm clients in connection with such services. Such amounts that are not collectable or that become not collectable from Firm clients may include, but is not limited to, amounts billed by Contractor in excess of a predetermined budget negotiated with a Firm client and write-downs of billings before or following tendering of a bill to a Firm client. Contractor is responsible for invoicing Firm for services rendered in connection with Firm client matters on a monthly basis. Time of payment is set forth below. To the extent that an invoice

from Contractor sets forth amounts based on fees to Firm clients that are not collectable or that become not collectable after payment of Contractor, such amounts shall be set off from payments to Contractor for future invoices or the Firm has the right to seek repayment from Contractor for such amounts.

4.2 Time of payment shall be as follows: Amounts shall not be paid to Contractor until such amounts are ripe for payment to Contractor, regardless of time of invoicing or time of rendering of service. Amounts are not ripe for payment until after they are ripe for invoicing and have been invoiced to the Firm. Amounts for time on any given matter shall not become ripe for invoicing to the Firm until the end of the month in which that matter is completed (e.g., filing of a patent application or response to an Office Action in a patent application). Amounts for time billed on matters specifically designated by the Firm in writing to be expected to last more than 90 days shall become ripe for payment at the end of the month in which such time is billed to a Firm client. Contractor shall not be entitled to any interest from Firm for any delayed payment.

4.3 No specific amount of work is guaranteed by the Firm during the term of this Agreement. Terms of compensation may be modified by the Firm with 30 days written notice to Contractor. Contractor and Firm understand that Firm expends resources to manage Contractor's engagement with Firm including, for example, client development, work product quality review and administrative overhead. Contractor and Firm also understand that revenue generated by collection of fees for services of Contractor on Firm client matters is expected to offset all or a portion of resources that Firm expends in managing Contractor's engagement with Firm. Accordingly, Contractor acknowledges a goal of a certain number of hours to be applied by Contractor to client matters over a twelve month duration as set forth in Appendix B are to be billed. Contractor agrees that if Contractor fails to reach or exceed the agreed upon number of billed hours set forth in Appendix B as the goal for the twelve month duration specified in Appendix B, the Firm, at its option, may seek reimbursement from the Contractor for the shortfall in total billed hours times the Contractor's nominal billing rate as set forth in Appendix B times one minus the Contractor's nominal percentage rate as set forth in Appendix B.

**5. Time Entry**

5.1 In addition to duties set forth above in Section 3, Contractor shall enter time to be billed to clients in connection with Firm client matters to Firm's time keeping system in a format determined by Firm. Contractor acknowledges the importance of prompt entry of time to

Firm's time keeping system and that delayed entry of Contractor's time may cause, among other things, delayed billing to clients (potentially affecting Firm cash flow) and delayed payment to other Contractors (who may have entered their time to the Firm's time keeping system in a timely fashion). Contractor further acknowledges that client fees in connection with delayed billing of Contractor's time on Firm client matters may be or become uncollectible as a result.

5.2 Accordingly, at the close of each month, Contractor shall promptly have all time for the month entered to Firm's time keeping system by no later than the end of the second business day of the following month. Should Contractor fail to enter his/her time by such date, the Firm, at its discretion, may withhold a portion of payment to Contractor not to exceed the amount of Contractor's time entered after such date for the month in question multiplied by Contractor's billing rate, as compensation for the inconvenience and costs associated with such delayed time entry. Such inconvenience and costs associated with such delayed time entry may include, but is not limited to, loss of Firm's goodwill to clients as a result of delayed billing, loss of Firm's goodwill with other Contractors due to delayed payment to such other contractors, non collection of fees a result of delayed billing of such fees, impacts to Firm cash flow and administrative costs associated with incorporating delayed time entry with Firm's monthly billing cycle.

**6. Engagements with Firm Clients or Prospective Firm clients.**

6.1 In the course of providing legal services to Firm clients from time to time Contractor will personally interact with Firm clients. Contractor further acknowledges that Firm depends on such client relationships for the continued business of providing legal services to such firm clients. Contractor shall not engage any Firm client or any prospective Firm client in any engagement for legal services, whether on behalf of the Firm or otherwise, without advanced written approval from the Firm. The Firm has the right in its sole discretion to designate any person or any entity as a prospective Firm client.

6.2 Contractor acknowledges that engagements with parties other than Firm Clients may give rise to conflicts of interests with Firm Clients as defined in appropriate rules of legal ethics. Accordingly, Contractor shall timely disclose to Firm Management any and all engagements to provide legal representation to parties which are not Firm Clients.

## 7. Expenses

The Firm shall neither directly pay nor reimburse Contractor for voluntary expenses or other overhead expenses he/she incurs. Furthermore, to the extent that the Firm may, on occasion, advance funds to pay expenses on behalf of Contractor, such as, for example, malpractice insurance, Contractor agrees to repay such amounts to the Firm in a timely fashion.

## 8. Indemnification and Cooperation

8.1 To the extent permitted by applicable law, Contractor shall indemnify and hold The Firm, its partners, members, shareholders, employees, groups, affiliates and agents, harmless from and against any and all claims, demands, loss, damage or expense related in any way to the services provided by Contractor to the Firm under this Agreement, including, but not limited to: (i) related to bodily injury or death of any person or damage to property resulting from the negligent or willful acts or omissions of Contractor, (ii) resulting from any claim that Contractor is not an independent contractor, (iii) incurred by The Firm based on any claim that any deliverable or other materials delivered under this Agreement or use thereof by the Firm infringes any copyright, trade secret or other proprietary right of any third party, (iv) arising from errors or omissions of Contractor giving rise to any claim of professional malpractice against Firm, or (v) resulting from a breach by Contractor of the provisions of this Agreement.

8.2 Contractor agrees to cooperate with the Firm in the defense of any action against Contractor or the Firm arising out of or in any way connected with his other activities on behalf of the Firm and further agrees to make himself available for purposes of the defense of any such action without charge to the Firm.

## 9. Termination

Subject to applicable rules of legal ethics, this Agreement shall automatically terminate in accordance with any of the following provisions:

9.1 The Firm may terminate this Agreement at any time upon one (1) day's prior written notice to Contractor.

9.2 Contractor may terminate this Agreement at any time upon one (1) day's prior written notice to the Managing Attorney of the Firm.

9.3 This Agreement shall automatically terminate on the occurrence of any of the following events:

a. The death, or 90 days after the disability or incapacity of Contractor;

b. The voluntary or involuntary dissolution of the Firm; or

c. The bankruptcy or insolvency of the Firm.

**10. Trade Secrets**

10.1 For the purpose of this Agreement, "trade secrets" shall mean (a) any information that is used in the Firm's business and that derives independent economic value from not being generally known to the public or to persons who can obtain economic value from its development or use, and (b) the Firm's information encompassed in all client files, computer printouts, manuals, plans, proposals, marketing and sales plans, financial information, costs, pricing information, clients lists, and all concepts or ideas on or reasonably related to the business of the Firm that have been publicly released by duly authorized representatives of the Firm.

10.2 Contractor agrees to regard and preserve as confidential information all trade secrets pertaining to the Firm's business that have been or may be obtained by Contractor by reason of his services for the Firm. Contractor further agrees that he or she shall not, without written authorization from the Firm, use for his own benefit or purposes or disclose to others, either during the term of this Agreement or thereafter, any trade secret or other confidential information connected with the business or other development of the Firm. Contractor agrees that he or she will return upon request or termination of this Agreement, whichever is earlier, the Firm's documents, client files, computer printouts, manuals, plans, proposals, reports, studies, client lists, or other documents or things at all related to or connected with the Firm's trade secrets (except Contractor's personal files and form files.)

**11. Confidentiality**

11.1 Contractor acknowledges that during the course of this Agreement, that Contractor may have access to and become acquainted with confidential and/or privileged information, such as information subject to the Attorney-Client privilege or Attorney Work Product privilege, for example. Contractor agrees that Contractor will not disclose any such information, directly or indirectly, or use any such information in any manner, either during the term of this Agreement or at any time

thereafter, except as required to perform Contractor's duties under this Agreement or as required by law. All such confidential and/or privileged information in any form including, but not limited to, files, records, documents, information stored on electronic media, letters, notes, notebooks, and any similar items relating to the business of the Firm, whether prepared by Contractor or otherwise coming into Contractor's possession, shall remain the exclusive property of the Firm and/or Firm clients. Upon expiration, or termination, of this Agreement Contractor shall return all such materials to the Firm, and shall not retain any copies of such materials without prior written consent from the Firm.

      11.2 Contractor shall not disparage the Firm in any form of written or oral communication to any party including, but not limited to, current or former Firm clients, prospective clients, competitors of the Firm, government agencies, and/or the like.

## 12. Integration Agreement

This Agreement contains the entire agreement between the parties and supersedes all prior oral and written agreements, understandings, commitments, and practices between the parties regarding the subject of this Agreement. To the extent that Contractor and Firm have entered into any unwritten agreements for services prior to the Effective Date of this Agreement, the parties agree that this written Agreement, with the exception of the percentage and hourly rate set forth in Appendix B, reflects the intent of the parties regarding the terms of any such unwritten agreement. No amendments to this Agreement, except as expressly provided herein to the contrary, may be made except by an agreement in writing signed by both parties.

## 13. No Waiver

No waiver by either party of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further continuing waiver by the Firm of any such term, provision, or condition of the Agreement.

## 14. Partial Invalidity

In the event that any provision of this Agreement shall be held to be unenforceable, invalid, or inoperative for any reason, the validity of the remainder of the terms and provisions of this Agreement shall not be affected thereby in any respect.

**15. Survival**

The rights and obligations of Contractor and Firm under Sections 10 and 11 of this Agreement shall survive termination of this Agreement under section 9 for a period of 5 years following such termination. The rights and obligations of Contractor and Firm under Section 8 shall survive termination of this Agreement for any reason.

**16. Notices**

16.1 Any notice to the Firm required or permitted hereunder shall be given in writing to the Firm, either by personal service, electronic mail or by registered or certified mail, postage prepaid, duly addressed to the Firm c/o the Managing Attorney of the Firm at its office, with a copy to the Firm Manager at the Firm's office. In the case of notice by electronic mail message, notice shall be effective upon receipt of such message. Any such notice to Contractor shall be given in a like manner and, if mailed, shall be addressed to Contractor at the last known address shown in the files of the Firm.

16.2 Any such notice to either party so deposited in the mail shall be deemed for all purposes of this Agreement to have been given forty-eight (48) hours after such deposit.

**17. Consideration**

Termination of any prior agreements between Contractor and Firm, and superseding any such prior agreements with terms of this Agreement in all respects, provides full consideration for this Agreement.

**18. Disputes**

Contractor shall provide Firm Management thirty (30) days written notice before bringing any suit for any claim or action under this Agreement including, but not limited to, disputes involving payment to Contractor. Contractor waives any ability to bring any such suit in the absence of such written notice. Contractor shall waive any jurisdiction in connection with legal proceedings for any claim or dispute arising under this Agreement. Additionally, Contractor shall waive any choice of venue in connection with legal proceedings for any claim arising under this Agreement.

IN WITNESS WHEREOF, the parties hereby execute this Agreement, as of the date hereof.

Berkeley Law & Technology Group, LLC

by: _____
Howard A. Skaist
Managing Attorney

Dated: 10/2/06

INDEPENDENT CONTRACTOR

by: _____
Kenneth Cool

Dated: August 8, 2006

APPENDICES

APPENDIX A

Contractor in the foregoing agreement refers to Kenneth Cool.

APPENDIX B

Terms of Compensation for Contractor

Contractor acknowledges a goal of at least 1600 billed hours (less amounts that are not collectable or that become not collectable from Firm clients in connection with such services) to be applied to matters of Firm clients over the twelve month period beginning July 1, 2006 and ending June 30, 2007.

Subject to the terms and conditions of this Agreement, the Firm shall pay Contractor the nominal percentage of 60% of the nominal hourly rate of $375 per hour, multiplied by Contractor's time for services by Contractor rendered in connection with Firm client matters up to 1600 billed hours (less amounts that are not collectable or that become not collectable from Firm clients in connection with such services) during the twelve month period beginning July 1, 2006 and ending June 30, 2007. Subject to the terms and conditions of this Agreement, the Firm shall pay Contractor the incentive percentage of 75% of the hourly rate of $375 per hour multiplied by Contractor's time for services by Contractor rendered in connection with Firm client matters in excess of 1600 billed hours (less amounts that are not collectable or that become not collectable from Firm clients in connection with such services) during the twelve month period beginning July 1, 2006 and ending June 30, 2007.